David J. LAWRIE, Petitioner,

v.

Robert SNYDER, Warden and M. Jane Brady, Attorney General of the State of Delaware, Respondents.

No. 96–469–JJF.

United States District Court, D. Delaware.

May 15, 1998.

Gary F. Traynor, Prickett, Jones, Elliott, Kristol & Schnee, Dover, DE, Scott E. Chambers, Schmittinger & Rodriguez, Dover, DE, for petitioner.

Loren C. Meyers, Wilmington, DE, John R. Williams, Dover, DE, for respondents.

**DEATH PENALTY CASE**
*OPINION*

FARNAN, Chief Judge.

Presently before the Court is a Petition For A Writ Of Habeas Corpus By A Person In State Custody (D.I.4) filed by Petitioner, David J. Lawrie. Pursuant to 28 U.S.C. § 2254, Petitioner requests that this Court vacate his convictions of May 21, 1993 and death sentence of July 8, 1993. For the reasons set forth below, the Petition will be dismissed and the Writ of Habeas Corpus denied.

**BACKGROUND**

In May of 1993, Petitioner was tried before a jury in Kent County Superior Court on four counts of Murder in the First Degree, three counts of Possession of a Deadly Weapon During the Commission of a Felony, one count of Arson in the First Degree, and one count of Burglary in the Second Degree. *State v. Lawrie,* Crim.A. Nos. K–92–08–0180 through 0182 (Del.Super.Ct.1993) (*"Lawrie I "*). These charges arose from an incident involving the August 6, 1992 deaths of Petitioner's wife, Mrs. Michelle Lawrie, his daughters, Fawn and Tabitha, and a neighbor's child, Charles Humbertson.

According to the testimony offered at trial, Petitioner and Mrs. Lawrie separated in May, 1992 after approximately eight difficult years of marriage. *Id.* (Tr. at E191–92). Petitioner was living at his mother's home in Dover with the couple's son, Marcus, and Mrs. Lawrie was living in the same neighborhood at her step-father's house with the couple's daughters, Fawn, age 4, and Tabitha, age 2. *Id.* (Tr. at C27). In July 1992, Petitioner had threatened to kill Mrs. Lawrie. *Id.* (Tr. at E231–32). On August 5, 1992 he pled guilty to a charge of terroristic threatening filed by Mrs. Lawrie in Family Court. *Id.* (Tr. at E231–32). He was placed on probation and ordered to have no contact with his wife. *Id.* (Tr. at D171). On that same day, according to one witness, Petitioner told an acquaintance that he was going to stab his wife to death and then kill himself. *Id.* (Tr. at C57).

On the morning of August 6, 1992, Petitioner went to the house where Mrs. Lawrie lived. *Id.* (Tr. at E171). Mrs. Lawrie was at home with the couple's two daughters and two neighborhood children whom Mrs. Lawrie was babysitting; Lisa Humbertson, age 8, and Lisa's brother, Charles Humbertson, age 4. According to Lisa, Petitioner first tried to enter the house through the front door, but when he was unable to do so, broke in through the door leading to the garage. *Id.* (Tr. at A132–33). When he entered the house, Petitioner was carrying a two-gallon gasoline can and a knife. *Id.* (Tr. at E175).

Petitioner then began to pour gasoline on the living room carpet while Mrs. Lawrie and

the children fled to the bedroom. *Id.* (Tr. at A134, E177). Lisa first tried to run out the front door, but Petitioner grabbed her and prevented her escape. *Id.* (Tr. at A135). Lisa then went into the bedroom with the others. *Id.* (Tr. at A136). Petitioner ignited the gasoline in the living room and broke into the bedroom, still carrying the knife and gasoline can. *Id.* (Tr. at A137). Petitioner then stabbed his wife as the children watched. *Id.* (Tr. at A138). He claimed that his intent was not to harm anyone but rather to "scare the hell out of [Mrs. Lawrie]." *Id.* (Tr. at E169, E176). The autopsy disclosed one puncture wound to the lung that was four inches deep, and four slash wounds, including a superficial slash wound to Mrs. Lawrie's throat and three deeper slash wounds to her forearms and wrist that appeared to be defensive wounds. *Id.* (Tr. at C93, C100). The Medical Examiner opined that these wounds were caused by a serrated knife like the one carried by Petitioner, rather than by broken glass. *Id.* (Tr. at C95). The puncture wound to the lung caused massive hemorrhaging and contributed to Mrs. Lawrie's death. *Id.* (Tr. at C100).

At this point, smoke began to engulf the house, and Petitioner broke through a bedroom window and escaped from the fire. *Id.* (Tr. at A140, E181). Mrs. Lawrie helped Lisa through the bedroom window, and Petitioner assisted Lisa by placing a step ladder against the outside wall. *Id.* (Tr. at A141). According to Lisa, as she was running away, she turned to look back at the house and saw what appeared to be Petitioner pushing Mrs. Lawrie back into the burning house as she tried to climb out the window. *Id.* (Tr. at A141). Petitioner disputed this, claiming that he had called to his wife but did not receive any response. *Id.* (Tr. at E153).

Instead of attempting to save the children inside, Petitioner ran to a nearby home, where he confessed to a neighbor that he had done something bad. *Id.* (Tr. at B176, E182). The neighbor called police and Petitioner surrendered. *Id.* (Tr. at B178). Petitioner made several subsequent confessions in which he admitted starting the fire. *Id.* (Tr. at A209). Although Petitioner told police that he had been awake all night smoking crack cocaine, none was found in his blood after the arrest. *Id.* (Tr. at E125, D167). The bodies of Mrs. Lawrie, Fawn, Tabitha and Charles Humbertson were found inside the home. *Id.* (Tr. at B55).

On May 21, 1993, the jury found Petitioner guilty of one count of Murder in the Second Degree (a lesser included offense of Murder in the First degree) for the killing of his wife, three counts of Felony Murder in the First Degree for the killing of his two daughters and Charles Humbertson, one count of Arson in the First Degree, one count of Burglary in the Second Degree, and three counts of Possession of a Deadly Weapon During the Commission of a Felony. *Id.* (Tr. at H49–50). Following a capital penalty hearing, the jury recommended by a vote of 9 to 3 in favor of the death penalty. *Id.* (Tr. of Penalty Hrg. at C15–18). On July 8, 1993, the trial judge adopted the jury's recommendation and ordered Petitioner's execution. *Id.* (Tr. of Sentencing at 23). Both the convictions and the sentences were affirmed by the Delaware Supreme Court. *Lawrie v. State*, 643 A.2d 1336 (Del.1994) ("*Lawrie II*"). The United States Supreme Court subsequently refused to grant certiorari. *Lawrie v. Delaware*, 513 U.S. 1048, 115 S.Ct. 646, 130 L.Ed.2d 551 (1994).

On November 17, 1994, pursuant to Delaware Superior Court Criminal Rule 61, Petitioner filed a *pro se* motion for post-conviction relief in the state trial court. The Superior Court granted a stay of execution and held an evidentiary hearing in June 1995 on Petitioner's motion for post-conviction relief. *State v. Lawrie*, Nos. IK92–08–0180 to IK92–08–0182, 1995 WL 818511 (Del.Super. Nov.28, 1995) ("*Lawrie III*"), *aff'd*, 682 A.2d 626 (Del.1996) ("*Lawrie IV*"). Prior to the hearing, counsel was appointed for Petitioner and counsel filed supplemental material in support of the motion. On November 28, 1995, the Superior Court denied Petitioner's motion for post-conviction relief, which was affirmed by the Delaware Supreme Court on appeal. *Id.* The case was remanded for the purpose of scheduling an execution date, which was set for November 15, 1996.

On September 20, 1996, Petitioner filed the instant Petition For A Writ Of Habeas Corpus (D.I.4), and on October 24, 1996, the Court granted Petitioner's Motion To Proceed In Forma Pauperis.[1] (D.I.2, D.I.11). Petitioner's execution was stayed by this Court on October 25, 1996. (D.I.12). In his Petition, Petitioner raises seven [2] grounds for relief: (1) the failure of Petitioner's trial counsel to provide a defense to the three felony murder counts; (2) the inability of the jury to hear and understand Petitioner's attorney at trial and sentencing; (3) trial counsel's failure to object to the prosecutor's improper argument to the jury during opening statements and closing arguments; (4) inadequate notice by the State of non-statutory aggravating circumstances that it intended to present during the penalty phase; (5) trial counsel's failure to develop and present mitigating psychiatric testimony; (6) trial counsel's failure to interview and call a witness during the penalty phase who would have rebutted allegations of Petitioner's violent conduct while incarcerated; and (7) the failure of the trial court to instruct the jury during the penalty phase on the respective burdens of proof regarding aggravating and mitigating factors. The Court will address each of these grounds separately below. Because grounds (1), (3), (5) and (6) all fall within the broader category of ineffective assistance of counsel, the Court will consider these four claims together.

## DISCUSSION

### A. Ineffective Assistance of Counsel

As noted above, four of Petitioner's claims can be categorized as ineffective assistance of counsel claims. These include Petitioner's contentions that his trial counsel: (1) did not provide a defense to the three felony murder counts; (2) failed to object to the prosecutor's purportedly improper argument to the jury; (3) failed to develop and present mitigating psychiatric testimony; and (4) failed to interview and call a witness during the penalty phase of the trial who would have rebutted allegations of Petitioner's violent conduct while incarcerated.

#### 1. Lack of Defense to Three Felony Murder Counts

Petitioner first contends that his trial counsel "failed to provide any legal representation" regarding the three first degree felony murder counts of which Petitioner was found guilty. (D.I. 23 at 4). Petitioner asserts that his lack of consent to this approach indicates the inherent unreasonableness of

---

1. Congress' recent amendments to the federal habeas corpus statute became effective on April 24, 1996. *See* Antiterrorism and Effective Death Penalty Act, Pub.L. No. 104–132, 110 Stat. 1214 (1996), codified at 28 U.S.C. § 2254 (1996). Because Petitioner filed his Petition after April 24 1996, the amendments apply to the instant case. *Dawson v. Snyder,* 988 F.Supp. 783, 801 (D.Del. 1997) (citing *Lindh v. Murphy,* 521 U.S. 320, 117 S.Ct. 2059, 2063, 138 L.Ed.2d 481 (1997)); *Twyman v. Warden Sherese Brewington Carr,* No. Civ.A. 96–365–SLR, 1997 WL 309456, at *2 (D.Del. Apr.7, 1997).

2. The Petition contains an additional ground for relief ("Ground One") in which Petitioner asserts that it would be cruel and unusual punishment to impose the death penalty for reckless felony murder. (D.I.4). In his opening brief, however, Petitioner announces the withdrawal of Ground One, and the issue is not briefed. (D.I. 23 at 4 n. 2). Respondent does not oppose the withdrawal. (D.I. 26 at 88). In permitting the withdrawal, the Court notes that Petitioner may run afoul of 28 U.S.C. § 2244 should he decide to raise this claim in a subsequent Petition. According to Section 2244(b):

(2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless—

(A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(B)(I) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be insufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2244(b)(2) (1997); *see also* Rules Governing Section 2254 Cases in the United States District Courts, Rule 9(b) (1997) (failure of petitioner to assert grounds for relief in prior petition may constitute abuse of writ).

his trial counsel's decision to pursue the defense in the manner that he did. (D.I. 23 at 21). As further evidence of the unreasonableness of trial counsel's actions, Petitioner argues that there was evidence in the record to support an argument that his state of mind with respect to the felony murder counts aligned more closely with "criminal negligence" than with "recklessness." (D.I. 23 at 23). Petitioner argues that such a finding by the jury would have rendered him ineligible for the death penalty. (D.I. 23 at 23). According to Petitioner, for all of these reasons, counsel's conduct failed to meet the standard set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). (D.I. 23 at 22).

Respondent concedes that Petitioner exhausted state remedies on this claim, as required by Title 28, Section 2254 of the United States Code, by presenting it to the Superior Court in his motion for post-conviction relief. (D.I. 26 at 13); *see* 28 U.S.C. § 2254(b)(1)(A) (1997). Respondent argues, however, that Petitioner is not entitled to relief because the state court's decision denying relief on this ground was reasonable both as to the determination of facts and the application of federal law. (D.I. 26 at 13, 14). Respondent argues that Petitioner did consent to counsel's defense strategy. (D.I. 26 at 15–16). Alternatively, Respondent contends that an attorney is not required to obtain his client's consent in formulating a defense strategy, and that the alleged failure to obtain such consent did not render counsel's conduct unreasonable. (D.I. 26 at 16). Further, Respondent asserts that trial counsel's approach to defending Petitioner on the three felony murder counts involved a global strategy aimed at presenting Petitioner's overall state of mind as one of recklessness, in the hopes that in light of such facts, the jury would be less inclined to choose the death penalty. (D.I. 26 at 19). Respondent argues that these factors, in conjunction with the "overwhelming evidence" of Petitioner's guilt, demonstrate that trial counsel's conduct met the *Strickland* standard. (D.I. 26 at 20).

### a. Review of the Claim on the Merits

■ Where a claim has been addressed on the merits by the state court, habeas relief under Title 28, Section 2254 of the United States Code is contingent upon a showing by the petitioner that the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law ... or ... resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d) (1997); *Dickerson v. Vaughn*, 90 F.3d 87, 90 (3d Cir.1996) (citing the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214, 1219 (1996), codified at 28 U.S.C. § 2254(d) (1996)). In addition, factual determinations made by a state court are presumed to be correct, and the petitioner carries the burden of rebutting such a presumption by clear and convincing evidence. 28 U.S.C. 2254(e)(1) (1996). Although the issue of ineffective assistance of counsel is considered to be a mixed question of law and fact and therefore subject to *de novo* review, the presumption of correctness still prevails for that portion of the state court's determination which deals with historical facts. *Strickland v. Washington*, 466 U.S. 668, 698, 104 S.Ct. 2052, 80 L.Ed.2d 674, *reh'g denied*, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984); *Deputy v. Taylor*, 19 F.3d 1485, 1494–95 (3d Cir.), *cert. denied*, 512 U.S. 1230, 114 S.Ct. 2730, 129 L.Ed.2d 853 (1994); *Winkler v. Keane*, 7 F.3d 304, 308 (2d Cir.1993), *cert. denied*, 511 U.S. 1022, 114 S.Ct. 1407, 128 L.Ed.2d 79 (1994).

Thus, this Court must determine whether the decision of the Delaware Superior Court, as affirmed by the Delaware Supreme Court, reflected a reasonable application of Federal law and was based on a reasonable determination of the facts of this case. In order to succeed on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-part test set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, *reh'g denied*, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984).

The first prong of the *Strickland* test requires a petitioner to show that his counsel's errors were so egregious as to fall below an "objective standard of reasonableness." *Id.* at 687–88, 104 S.Ct. 2052. In determining whether counsel's representation was objectively reasonable, "the court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. 2052. In turn, the petitioner must "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)). Under the second prong of *Strickland*, the petitioner must demonstrate that he was actually prejudiced by counsel's errors, meaning that there is a reasonable probability that, but for counsel's faulty performance, the outcome of the proceedings would have been different. *Strickland*, 466 U.S. at 692–94, 104 S.Ct. 2052; *Deputy*, 19 F.3d at 1493 (citations omitted); *Frey v. Fulcomer*, 974 F.2d 348, 358 (3d Cir .1992), *cert. denied*, 507 U.S. 954, 113 S.Ct. 1368, 122 L.Ed.2d 746 (1993). Prejudice also includes a showing that counsel's errors deprived Petitioner of a fair or reliable trial. *Lockhart v. Fretwell*, 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). Thus, a purely outcome determinative perspective is inappropriate. *Id.; Flamer v. State*, 68 F.3d 710, 729 (3d Cir.1995), *cert. denied*, 516 U.S. 1088, 116 S.Ct. 807, 133 L.Ed.2d 754 (1996).

■ The Delaware Superior Court applied the *Strickland* test to this claim and determined that Petitioner had failed to demonstrate that his trial counsel's performance regarding the defense of the three felony murder charges was either objectively unreasonable or prejudicial.[3] *Lawrie III*, 1995 WL 818511, at \*10. Having independently reviewed the evidence, the Court agrees with the Superior Court's findings of fact and legal analysis, and concludes that the resolution of this claim by the Delaware Superior Court, as affirmed by the Delaware Supreme Court, reflected a reasonable application of Federal law and was based on a reasonable determination of the facts of this case.

First, Petitioner has not demonstrated that his trial counsel's tactics were objectively unreasonable. Counsel's actions reflected a global trial strategy, rather than a lack of defense to certain claims. The evidence at trial included a detailed confession by Petitioner, Petitioner's previous statement that he was going to kill his wife, the no-contact order entered in Family Court the previous day in conjunction with Petitioner's plea of guilty to terroristic threatening, and the details of the crime itself. *Id.* at \*8. The Court agrees with the Superior Court that trial counsel's clear objective, when faced with the overwhelming evidence of Petitioner's guilt, was to "convince the jury that [Petitioner] did not act intentionally and thereby, hopefully, be in a superior position to argue to the jury that his life should be spared because his actions were merely reckless." *Id.* This was not an objectively unreasonable strategy on the part of trial counsel. In fact, the success of trial counsel in convincing the jury that Petitioner acted recklessly, rather than intentionally, in killing his wife demonstrates how reasonable the strategy was.

**3.** In reaching its conclusion that this claim is "devoid of merit," the Delaware Superior Court added that this claim was barred by Delaware Superior Court Criminal Rule 61(i)(3). *Lawrie III*, 1995 WL 818511, at \*10. Rule 61(i)(3), which bars the Delaware Superior Court from considering any claim not presented in "the proceedings leading to the judgment of conviction." Del.Super.Ct.Crim.R. 61(i)(3). It is unclear to the Court how this ineffective assistance claim would be barred in light of the Superior Court's comment earlier in its opinion that ineffective assistance claims are "normally not subject to the procedural default rule, in part because the Delaware Supreme Court will not hear such a claim for the first time on direct appeal and therefore as a practical matter the first opportunity to raise this issue is in a collateral attack such as the Rule 61 motion for post-conviction relief." *Lawrie III*, 1995 WL 818511, at \*6 (citing Del.Supr.Ct.R. 8); *see* Del.Supr.Ct.R. 8 (1997) ("[o]nly questions fairly presented to the trial court may be presented for review" unless interests of justice so require). In any event, the Superior Court does not accompany its bald statement regarding the procedural bar with any analysis. Therefore, the Court considers this claim on its merits.

For further discussion regarding the procedural bar mechanism, see pages 440–41.

Petitioner argues that instead of pursuing this strategy, trial counsel should have argued that Petitioner was only guilty of criminal negligence rather than recklessness, which, according to Petitioner, would have rendered him ineligible for the death penalty. (D.I. 23 at 23). In making such an assertion, Petitioner relies heavily on the testimony of Deputy Fire Marshall Montgomery, who testified at trial that most untrained individuals do not recognize the extent of gasoline's dangerousness. *Lawrie I*, Crim.A. Nos. K–92–08–0180 to 0182 (Tr. at B104–105). Petitioner contends that his lack of appreciation for the risk involved is reflected both in his statement that he intended only to scare his wife and in the following testimony:

> I thought there would just be a little bit of smoke and a little bit of damage and maybe just a little fire, just enough to where I could get everybody out of the back of the house, like I said, because I knew there were sliding glass doors back there. I didn't expect it to go up such as it did and as fast as it did.

*Id.* (Tr. at E178). According to Petitioner, all of this evidence indicates a negligent state of mind rather than a reckless state of mind. (D.I. 23 at 23).

The Court is unconvinced that Petitioner's proposed strategy would have been viable. According to the Delaware Code, a person acts "recklessly" when he or she "is aware of and consciously disregards a substantial and unjustifiable risk that the element exists or will result from the conduct." Del.Code Ann. tit. 11, § 231(c) (1997). In contrast, a person acts with "criminal negligence" when he or she "fails to perceive a risk that the element exits or will result from the conduct." Del. Code Ann. tit. 11, § 231(d) (1997). In the Court's view, the testimony highlighted by Petitioner indicates a reckless state of mind: Petitioner knew that there was a need "to get everybody out of the back of the house" with some measure of speed. *Lawrie I*, Crim.A. Nos. K–92–08–0180 through 0182 (Tr. at E178). The Court rejects the notion that a jury could have returned a verdict of criminally negligent felony murder based on the evidence before it. As stated by the Superior Court, "[Petitioner] admitted kicking in the door to the house, pouring gasoline around where young children were playing and lighting it. Such conduct is undeniably reckless." *Lawrie III*, 1995 WL 818511, at *10.

Further, the Court disagrees that a finding of negligence would have made Petitioner ineligible for the death penalty. First, according to Delaware law, recklessly causing the death of another while committing a felony is one category of murder in the first degree; causing the death of another with criminal negligence while committing arson in the first degree is another category of murder in the first degree. Del.Code Ann. tit. 11, §§ 636(a)(2), (6) (1997). The latter is not a lesser or included offense of the former, and, in fact, a defendant can be convicted under several subsections of Section 636. *Chao v. State*, 604 A.2d 1351, 1360–61 (Del. 1992) (Delaware law permits multiple convictions for first degree murder arising from death of single person); *cf. Flamer v. State*, 490 A.2d 104, 117–18 (Del.), *cert. denied*, 464 U.S. 865, 104 S.Ct. 198, 78 L.Ed.2d 173 (1983) (defendant can be convicted of both intentional killing and reckless killing in course of committing felony under subsections 636(a)(1) and 636(a)(2) respectively; section 636(2) is not lesser included offense of section 636(a)(1)) (citing Del.Code.Ann. tit 11, §§ 636(a)(1), (2)).

Second, the Court disagrees with Petitioner's reading of the United States Supreme Court's decisions in *Enmund v. Florida* and *Tison v. Arizona* to support his theory that he would not have been sentenced to death if trial counsel had argued that his state of mind in killing his victims was criminal negligence. *See Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982); *Tison v. Arizona*, 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127, *reh'g denied*, 482 U.S. 921, 107 S.Ct. 3201, 96 L.Ed.2d 688 (1987). In *Enmund*, the Supreme Court found that where a defendant had no intent to kill, sentencing him to death for a murder committed by an accomplice during the course of a felony constituted cruel and unusual punishment under the Eighth Amendment. *Enmund*, 458 U.S. at 788, 102 S.Ct. 3368. In *Tison*, the Court found that the death penal-

ty may be imposed where an individual, though not the actual killer, substantially participated in the underlying felony with a reckless indifference to human life. *Tison,* 481 U.S. at 158, 107 S.Ct. 1676. Petitioner reads these two cases in combination to preclude the imposition of the death penalty when a killing results from the actor's criminally negligent state of mind. (D.I. 23 at 23). The Court concludes that this analysis is incorrect. As distinguished from the defendants in *Enmund* and *Tison,* Petitioner acted alone and was the actual killer in the instant case, not as an accomplice. Thus, the Supreme Court's conclusions in *Tison* and *Enmund* regarding the respective defendants' death sentences are wholly inapplicable to Petitioner. This analysis is supported by the language of *Tison* itself, wherein the Supreme Court noted "the apparent consensus that *substantial participation* in a violent felony under circumstances likely to result in the loss of innocent human life may justify the death penalty even absent an 'intent to kill.'" *Tison,* 481 U.S. at 154, 107 S.Ct. 1676 (emphasis added).

In addition, the Court does not agree with Petitioner that prejudice should be presumed in this case. In support of this proposition, Petitioner cites *United States v. Cronic,* wherein the United States Supreme Court held that prejudice is to be presumed where there has been a "complete denial of counsel" or where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." 466 U.S. 648, 658–659, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). The Court finds that trial counsel did put the prosecution's case to meaningful adversarial testing and did attempt a global strategy aimed at capturing the emotions of the jury. The fact that the strategy was unsuccessful does not mean that it was not attempted, nor that it was unreasonable under the circumstances.

Finally, given that prejudice cannot be presumed, Petitioner has not met his burden of proving prejudice under *Strickland,* in that he has not demonstrated a reasonable probability that the outcome of the proceedings would have been different if trial counsel had acted differently. *See Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. As discussed

above, the Court is unconvinced that a jury could have found that Petitioner had a merely negligent state of mind in committing these crimes, and is unconvinced that such a finding would have altered the ultimate penalty. Thus, Petitioner has failed to show actual prejudice, and the state court's consistent conclusion was reasonable both as to its factual determinations and the application of Federal law.

### b. Consent Issue and Request For Evidentiary Hearing

■ As noted earlier, within his argument under the first prong of *Strickland,* Petitioner contends that his alleged lack of consent to the defense strategy used at trial demonstrates that trial counsel's actions were objectively unreasonable, and therefore, Petitioner requests that the Court hold an evidentiary hearing on his purported lack of consent. (D.I. 23 at 29). Rule 8 of the Rules Governing Section 2254 Cases in the United States District Courts states that the court shall determine whether an evidentiary hearing is required. Rules Governing Section 2254 Cases in the United States District Courts, Rule 8 (1997). Rule 8 does not, however, set forth specific criteria for making such a determination. *Id.* Thus, an understanding of the applicable standard requires a historical review of habeas corpus law concerning when evidentiary hearings are warranted.

A state prisoner's right to an evidentiary hearing in a federal habeas corpus action was set forth in the United States Supreme Court case of *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), *overruled in part by Keeney v. Tamayo–Reyes,* 504 U.S. 1, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992). In *Townsend,* the Court stated that where a petitioner has alleged facts that, if proved, would entitle him to relief, the district court has the discretion to hold an evidentiary hearing on disputed material facts. *Id.* at 312, 318, 83 S.Ct. 745. In addition, the Court held that an evidentiary hearing is required where the petitioner did not receive a full and fair hearing on the relevant facts in state court. *Id.* at 313, 83 S.Ct. 745. The Court expanded upon this notion by announcing six

circumstances under which a district court must hold an evidentiary hearing:

> If (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.

*Id.* at 313, 83 S.Ct. 745.[4]

*Townsend* set the standard until 1992, when the Court altered the showing required under *Townsend*'s fifth factor. Prior to the Court's decision in *Keeney v. Tamayo–Reyes,* in situations where material facts were not adequately developed in the state court record due to the fault of petitioner or his attorney, the petitioner was required to show only that he did not deliberately bypass the opportunity to present facts to the state forum. *Keeney v. Tamayo–Reyes,* 504 U.S. 1, 5, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992). In *Keeney,* the Court overruled *Townsend* to the extent that *Townsend* required the application of the "deliberate bypass" standard in such circumstances, and instead invoked a heightened standard, requiring a petitioner alleging inadequate development of material facts in the state court to show cause for his failure to develop an adequate factual record and prejudice resulting from that failure. *Keeney,* 504 U.S. 1, 10, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992); *Johnson v. Rosemeyer,* No. Civ. 91–2865, 1994 WL 702664, at *1–2 (E.D.Pa. Dec.14, 1994).

Four years after *Keeney,* Congress adopted the Antiterrorism and Effective Death Penalty Act, which adds to Section 2254 an evidentiary hearing provision. Antiterrorism and Effective Death Penalty Act, Pub.L. No. 104–132, 110 Stat. 1214 (1996), codified at 28 U.S.C. § 2254(e)(2) (1996) ("the Act"). In so doing, Congress sought to "curb abuse of the statutory writ of habeas corpus, and to address the acute problems of unnecessary delay and abuse in capital cases." H.Conf.Rep. No. 104–518, 104th Cong.2d Sess., 111 (1996), *reprinted in* 1996 U.S.C.C.A.N. 924, 944; *see also Porter v. Gramley,* 112 F.3d 1308, 1317 (7th Cir.1997) (noting that new language of § 2254 further restricts availability of evidentiary hearings). Section 2254(e)(2) sets forth the standard for holding an evidentiary hearing in situations where "the applicant has failed to develop the factual basis of a claim in State court proceedings." 28 U.S.C. § 2254(e)(2). Thus, in effect, the 1996 amendment supersedes *Keeney,* which superseded a portion of *Townsend,* namely, the fifth circumstance in which an evidentiary hearing is mandatory. The remainder of *Townsend,* however, appears to have been left intact, including the other five factors under which an evidentiary hearing is mandatory, as well as the court's overriding ability to hold a hearing in its discretion.[5] *Bell v. Evatt,* 72 F.3d 421, 426 n. 5 (4th Cir.1995), *cert. denied sub nom Bell v. Moore,* 518 U.S. 1009, 116 S.Ct. 2533, 135 L.Ed.2d 1056 (1996), *reh'g denied,* 518 U.S. 1047, 117 S.Ct. 24, 135 L.Ed.2d 1118 (1996) (post-*Keeney* decision setting forth six *Townsend* factors for mandatory evidentiary hearing); *Pagan v. Keane,* 984 F.2d 61, 64 (2d Cir.1993) (*Keeney* did not alter district court's ability to hold discretionary hearings); James S. Liebman & Randy Hertz, *Federal*

---

4. This list of factors is not to be confused with the list of factors contained in former Section 2254(d) of Title 28, the language of which closely parallels that of *Townsend.* The factors in the 1966 version of Section 2254(d) set forth not when an evidentiary hearing is mandated, but rather how much weight a district court must assign to "a determination after a hearing on the merits of a factual issue, by a state court." 28 U.S.C. § 2254(d) (1966). In other words, the section addressed presumptions of correctness. *Id.* In 1996, these presumptions were revised and recodified as Sections 2254(d)(2) and 2254(e)(1). 28 U.S.C. §§ 2254(d)(2), (e)(1) (1996).

5. Also left untouched by these developments is the situation where someone other than petitioner or his attorney is responsible for the failure to develop an adequate factual record in the state court. James S. Liebman & Randy Hertz, *Federal Habeas Corpus Practice and Procedure,* 1997 Cumulative Supplement, 195 & n. 35 (2d ed.1994) (citations omitted).

*Habeas Corpus Practice and Procedure,*
1997 Cumulative Supplement, 195–96 & n. 35
(2d ed.1994) (citing *Douglas v. Calderon,* No.
CV 91–3055 RSWL (C.D.Cal. June 11, 1996)
(Act not intended to overrule *Townsend* and
other *Townsend* factors remain · in effect)).

In view of this precedent, statutory evolu-
tion and legislative history, and after review-
ing the relevant motions, briefs, and tran-
scripts from the state court proceedings in
the instant case, the Court concludes that an
evidentiary hearing is neither mandated nor
necessary in this case on the issue of consent.

First, the Court is not mandated to hold an
evidentiary hearing. The Court concludes
that the first of *Townsend*'s six factors is the
only factor potentially relevant to the consent
issue, namely that the merits of the factual
dispute may not have been resolved in the
state court hearing, exclusively as regards
the particular issue of consent. *See Town-
send,* 372 U.S. at 313. This view is based not
only on the record, but also on Petitioner's
own request for an evidentiary hearing,
which makes no assertions regarding the
conduct of the hearing that did occur, but
rather is based entirely on the notion that
the state court made no explicit finding on
the issue of consent. (D.I. 23 at 29). While
it is true that the state court did not make a
specific finding on the issue of consent, the
state court did hear evidence on the issue of
consent and did make an explicit finding on
the ineffective assistance claim as a whole.
*Lawrie III,* 1995 WL 818511, at *10, (Tr. at
B38–40, B165, B168, B179, B185, B194–97,
C90–93, C98–104, C124, C127–28, C130–31).
As stated in *Townsend* regarding the first of
the six factors requiring an evidentiary hear-
ing,

> If the state court has decided the merits of
> the claim but has made no express find-
> ings, it may still be possible for the Dis-
> trict Court to reconstruct the findings of
> the state trier of fact, either because his
> view of the facts is plain from his opinion
> or because of other indicia.

*Townsend,* 372 U.S. at 314, 83 S.Ct. 745.
Such a reconstruction is possible if the state
court "applied correct constitutional stan-
dards in disposing of the claim." *Id.*

Here, the state court correctly applied the
*Strickland* standard to the ineffective assis-
tance of counsel claim, and concluded that
there was no constitutional violation. *Lawrie
III,* 1995 WL 818511, at *10. Such a conclu-
sion indicates that the state court weighed
the evidence and determined that Petitioner
consented to the defense strategy, or that the
state court determined that Petitioner's con-
sent was not required on this issue because it
was a tactical question reserved for counsel
rather than the client. There is adequate
evidence in the record and adequate case law
to support either result. *Lawrie III,* 1995
WL 818511 (Tr. at B38–40, B165, B168, B179,
B185, B194–97, C90–93, C98–104, C124,
C127–28, C130–31); *Government of the Vir-
gin Islands v. Weatherwax,* 77 F.3d 1425,
1433 (3d Cir.), *cert. denied,* —— U.S. ——,
117 S.Ct. 538, 136 L.Ed.2d 423 (1996) (client
should make fundamental decisions such as
whether to plead guilty, waive jury trial, or
testify on own behalf, but decisions regarding
strategy and tactics are reserved for attor-
ney) (citing *Wainwright v. Sykes,* 433 U.S.
72, 93, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)
(Burger, C.J., concurring)); *United States v.
Teague,* 953 F.2d 1525, 1531 (11th Cir.), *cert.
denied,* 506 U.S. 842, 113 S.Ct. 127, 121
L.Ed.2d 82 (1992) (same); *Jones v. Barnes,*
463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d
987 (1983) (it is defense counsel's province to
focus on key issues and winnow out weaker
arguments). In either event, the state court
came to the ultimate conclusion, via numer-
ous particularized findings of fact, that Peti-
tioner's trial counsel was not constitutionally
ineffective as regards the defense of the
three felony murder charges. *Lawrie III,*
1995 WL 818511, at *8–10. In the Court's
view, this indicates an "implied" finding on
the issue of consent. *See Townsend,* 372
U.S. at 314, 83 S.Ct. 745 (in considering
whether merits of factual dispute were re-
solved in state court, district court must de-
termine "whether the state court *impliedly*
found material facts") (emphasis added).
Because the Court is able to reconstruct the
findings of the state court based on the post-
conviction transcript and the opinion of the
Superior Court and is able to make a clear
inference regarding the issue of consent, the

Court concludes that disposition of the claim does not require an evidentiary hearing.

Further, the Court is not persuaded that, under the circumstances presented here, it should use its discretionary powers to grant an evidentiary hearing. This is because the Court is convinced that Petitioner did receive a full and fair hearing on the issue of consent in the state court. This is evidenced by the testimony elicited at the post-conviction motion hearing and set forth in both Petitioner's and Respondent's briefs. (D.I. 23 at 28–29; D.I. 26 at 15–16); *Lawrie III*, 1995 WL 818511 (Tr. at B38–40, B165, B168, B179, B185, B194–97, C90–93, C98–104, C124, C127–28, C130–31). Thus, the facts needed to render a decision on the ineffective assistance claim are already before the Court, and it is not necessary to hold an additional evidentiary hearing. For all of these reasons, Petitioner's request for an evidentiary hearing on the issue of consent will be denied.

### 2. Failure to Object to Prosecutor's Improper Argument to Jury

Petitioner next argues that trial counsel was ineffective for failing to object to allegedly inappropriate comments made by the prosecutor during the opening statement of the guilt phase and the closing argument of the penalty phase of Petitioner's trial, and that appellate counsel was ineffective for failing to raise this issue on appeal. (D.I. 23 at 42). Petitioner lists ten statements from the prosecutor's opening statement at trial that Petitioner claims were argumentative and inflammatory.[6] (D.I. 4 at 12–13 ("Ground Four")). Petitioner also contends that the prosecutor improperly argued to the jury during the penalty phase "that (1) its role was to communicate a message to the public by way of its recommendation to the sentencing judge, (2) the fact of each victim's separate death was an aggravating circumstance and (3) its recommendation should be based on its 'sorrow for the dead.'" (D.I. 4 at 13–14 ("Ground Four")). Petitioner argues that all thirteen of these statements were inappropriate, and therefore, that trial counsel's failure to object and appellate counsel's failure to raise these issues on appeal was objectively unreasonable under the first prong of *Strickland*.[7] (D.I. 23 at 49). Petitioner further asserts that these omissions by both trial and appellate counsel were prejudicial under *Strickland's* second prong. (D.I. 23 at 50).

■ An understanding of Respondent's contentions regarding this claim requires an explanation of federal habeas law pertaining to the procedural bar mechanism. Federal review of a habeas claim is procedurally barred when the state court disposition of the claim rests on an independent and adequate state ground. *Harris v. Reed*, 489 U.S. 255, 260–62, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989). This requires a plain statement by the state court indicating its reliance on

**6.** In the Petition, Petitioner lists the following ten comments as problematic:

 A. The crime scene "turned into a living hell" for the victims.
 B. "It was, ladies and gentlemen, a horrible living nightmare for Michelle Lawrie, her own children, and those she was asked to babysit."
 C. "... it will be your [the jury's] responsibility to share to an extent in that living nightmare as those in the home felt that day."
 D. "You will experience and understand intellectually and emotionally before this case is over, because of what you will hear from the witness stand and because of what you will see based on the exhibits introduced in this case, exactly what the sheer terror and pain was that morning that proceeded (sic) the loss of Michelle's life, the lives of her two children, Fawn and Tabitha, and also the life of the visitor in her home that morning, Charles Humbertson, that four year old."

 E. The jury will hear from a surviving witness how the defendant "wantonly murdered four—yes, four—human beings and destroyed families, whole families in the process."
 F. The children's "lifeless bodies were later discovered there by firemen who entered the building. They were stacked like rag dolls."
 G. The State will introduce testimony that will have a "chilling effect."
 H. "As a result of this otherwise indescribable conduct, the Grand Jury of Kent County brought an indictment ... They [the grand jury] called it Murder in the First Degree ..."
 I. "You won't need any lessons about moral guilt and legal guilt to decide the case."
 J. "This case won't just sound pretty bad as it does; it is bad ."
(D.I. 4 at 12–13 ("Ground Four")); *Lawrie I*, Crim. A. Nos. K–92–08–0180 to 0182 (Tr. at A28–38).

**7.** For a discussion of the *Strickland* case, *see* pages 434–35.

the state law ground. *Harris,* 489 U.S. at 263, 109 S.Ct. 1038 (citations omitted). In such circumstances, the Court will not review the merits of the claim unless the petitioner can demonstrate both cause and actual prejudice for the procedural default, or that a miscarriage of justice will result if the Court refuses to hear the claim. *Coleman v. Thompson,* 501 U.S. 722, 750–51, 111 S.Ct. 2546, 115 L.Ed.2d 640, *reh'g denied,* 501 U.S. 1277, 112 S.Ct. 27, 115 L.Ed.2d 1109 (1991). To establish cause for a procedural default, the petitioner "must show that 'some objective factor external to the defense' precluded his compliance with the state procedural rules." *Bailey v. Kearney,* No. Civ. A. 95–279–SLR, 1997 WL 309449, at *3 (D.Del. Apr.3, 1997) (citing *McCleskey v. Zant,* 499 U.S. 467, 493, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991)).

■ Preliminarily, Respondent contends that of the thirteen allegedly improper statements made by the prosecutor and listed in the Petition, six were presented to the Delaware Superior Court in Petitioner's motion for post-conviction relief, but were not briefed on appeal. (D.I. 21 at 29). Apparently viewing each of the prosecutor's comments as a separate claim, Respondent argues that although these six "claims" were exhausted as required by Title 28, Section 2254(b)(1)(A), they were also waived because they were not presented in the post-conviction appeal. (D.I. 21 at 29); *see* 28 U.S.C. § 2254(b)(1)(A) (exhaustion requirement). Respondent asserts that Petitioner must therefore show cause for failing to mention these comments in the post-conviction appeal and resulting prejudice, and views Petitioner's contention of ineffective assistance as a futile attempt "to establish cause for his procedural default." (D.I. 21 at 30).

The Court disagrees with Respondent's grouping of the statements made by the prosecutor as a means to establish a procedural bar. In his brief to the Delaware Supreme Court, Petitioner made both general and specific references to the opening and closing statements of the prosecutor, citing the trial transcript accordingly. (Appellant's Opening Brief at 32–41). In any event, the Court will not adopt the piecemeal analysis

suggested by Respondent, assessing the procedural disposition of this claim with each sentence uttered by the prosecutor. Instead, the Court will consider the prosecutor's opening statement at trial and closing argument at sentencing in their entirety in order to determine whether this claim is procedurally barred. Thus, the Court turns to Respondent's argument regarding the remainder of the prosecutor's statements.

Respondent's contentions as to the rest of the thirteen statements stems from its perception that the claim before this Court is one of prosecutorial misconduct. (D.I. 21 at 28; D.I. 26 at 37). Respondent argues that the claim has been procedurally defaulted because the Superior Court ruled that it was barred by the independent and adequate state law ground of Delaware Superior Court Criminal Rule 61(i)(3). *Lawrie III,* 1995 WL 818511, at *10. The Superior Court did, in fact, view Petitioner's claim in his post-conviction motion as one of prosecutorial misconduct, and held that it was barred under Rule 61(i)(3) because Petitioner failed to assert it on direct appeal. *Lawrie III,* 1995 WL 818511, at *10; Delaware Superior Court Criminal Rule 61(i)(3). The Superior Court interpreted the allegations of ineffective assistance of counsel as an attempt to show cause for procedural default of the prosecutorial misconduct claim. *Lawrie III,* 1995 WL 818511, at *10. The court then considered the ineffective assistance of counsel claim on its merits, and concluded that Petitioner had failed to show cause in that he did "not follow through with the required *Strickland* analysis." *Id.* After reviewing the trial transcripts, the court applied *Strickland* to the ineffective assistance allegation and determined that neither trial counsel nor appellate counsel acted in an objectively unreasonable manner, and that Petitioner was not prejudiced by their omissions. *Id.* at *11. Thus, the court concluded that by failing to establish ineffective assistance of counsel, Petitioner did not show cause for the procedural default of his prosecutorial misconduct claim.

In his Motion For Post-Conviction Relief before the Delaware Superior Court, Petitioner set forth two claims of prosecutorial misconduct; one pertaining to comments

made during opening statements of the guilt phase and one pertaining to closing arguments in the penalty phase. Supplement to Motion For Post–Conviction Relief, Supplement, at "Ground Nine" and "Ground Eighteen," *Lawrie III*, 1995 WL 818511. Petitioner also set forth a separate claim of ineffective assistance of counsel based on the alleged prosecutorial misconduct. Supplement to Motion For Post–Conviction Relief, Supplement, at "Ground Twenty," parts B. and N., *Lawrie III*, 1995 WL 818511. Thus, the Superior Court naturally viewed the ineffective assistance claim as an attempt to show cause for failing to previously raise the prosecutorial misconduct claim.

In contrast to the content of the motion presented to the Delaware Superior Court, Petitioner frames his claim in the instant Petition primarily as one of ineffective assistance of counsel. (D.I. 23 at 42). Were the Court to agree with Respondent and view Petitioner's claim in the instant case as one of prosecutorial misconduct with an underlying argument of ineffective assistance of counsel as a means to show cause for procedural default, the claim would be procedurally barred, as Respondent suggests. However, the Court views the claim presently before it as a claim for ineffective assistance of counsel, with underlying facts relating to alleged prosecutorial misconduct. Based on this distinction, the Court does not agree that the claim is procedurally barred and will review the claim on its merits. In approaching this claim as one of ineffective assistance of counsel, the Court recognizes that resolution of the claim inherently requires the Court to consider the appropriateness of the comments made by the prosecutor at trial in order to determine whether counsels' responses to those comments were objectively reasonable under *Strickland*. The Court need not, however, determine whether the prosecutor's comments rose to the level of prosecutorial misconduct in order to resolve whether counsel was ineffective in failing to object. *See Johnston v. Love*, 940 F.Supp. 738, 754 (E.D.Pa.1996), *aff'd*, 118 F.3d 1576 (3d Cir.), *cert. de-*

*nied*, —— U.S. ——, 118 S.Ct. 425, 139 L.Ed.2d 326 (1997) (court analyzed failure to object to prosecutor's comments under *Strickland* without considering standard of prosecutorial misconduct).

As previously discussed, the Court may grant relief for a claim adjudicated on the merits in the state court only if the state court decision involved an unreasonable application of Federal law or was based on an unreasonable determination of the facts.[8] 28 U.S.C. § 2254(d). Thus, the Court must essentially consider whether the state court correctly determined that trial and appellate counsels' omissions did not rise to the level of ineffective assistance under *Strickland*.[9] Because the reasonableness of appellate counsel's conduct on this issue is dependent upon the reasonableness of trial counsel's conduct, the Court will first consider trial counsel's conduct.

Under the first prong of *Strickland*, Petitioner is required to demonstrate that counsel's errors fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 686–94, 104 S.Ct. 2052. In order for the Court to determine whether trial counsel's failure to object to the prosecutor's statements was objectively reasonable, the Court must first examine the prosecutor's statements to determine whether they warranted objections.

In considering the propriety of the prosecutor's comments, whether they were objectionable, and whether objections would have been sustained, the Court is aware of the standards in Delaware regarding how prosecutors are to conduct themselves at trial. The Delaware Supreme Court has adopted the Prosecution and Defense Functions from the American Bar Association Standards. *Hughes v. Delaware*, 437 A.2d 559, 566 (Del. 1981) (quoting ABA Standards, the Prosecution and Defense Functions (Approved Draft, 1971)). These standards provide that the opening statement should be confined to the evidence which the prosecutor " 'intends to offer which he believes in good faith will be available and admissible and a brief state-

---

8. For a more thorough discussion of this standard, see pages 433–34.

9. For a more thorough discussion of the *Strickland* holding, see pages 434–35.

ment of the issues in the case.'" *Id.* at 567. As for closing arguments, the prosecutor "'may argue all reasonable inferences from evidence in the record'" and "'should not use arguments calculated to inflame the passions or prejudices of the jury.'" *Id.*

The Court has also considered another standard as a guideline in analyzing trial counsel's reaction to the prosecutor's comments. Although Petitioner is not directly claiming prosecutorial misconduct, the Court views the standards for a prosecutorial misconduct claim as helpful in establishing the parameters of reasonableness for a prosecutor's comments and whether any objections to those comments would have been sustained. In considering remarks made by a prosecutor in the context of a prosecutorial misconduct claim, "[t]he relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144, *reh'g denied,* 478 U.S. 1036, 107 S.Ct. 24, 92 L.Ed.2d 774 (1986) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 645, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)). As previously stated by this Court, "the standard by which the court ... must review a prosecutor's comments is whether, in the context of the trial as a whole, they were of such a nature as to render the trial fundamentally unfair." *United States ex rel. Hamilton v. Ellingsworth,* 692 F.Supp. 356, 360 (D.Del.1988).

Bearing these standards in mind, the Court will consider trial counsel's failure to object to the prosecutor's statements. For ease of analysis, comments made by the prosecutor can be divided into four categories. The first category consists of comments regarding the experience of the victims and describing the evidence. (D.I. 4, "Ground Four," Supporting Facts A., B., E., F., G., and J.). The second category includes comments on what the jury would experience during the trial. (D.I. 4, "Ground Four," Supporting Facts C. and D.). The third category consists of the prosecutor's reference to the Grand Jury indictment. (D.I. 4, "Ground Four," Supporting Fact H.). Finally, the fourth category consists of comments

pertaining to how the jury should make its decision. (D.I. 4, "Ground Four," Supporting Facts I. and (1), (2) and (3)).

The Court first considers the prosecutor's comments regarding the experience of the victims and describing the evidence. Having reviewed the opening statement in its entirety and viewing the comments at issue in context, the Court concludes that it was not objectively unreasonable for trial counsel to refrain from objecting to these statements. While the prosecutor may have selected words that were graphic in order to capture the attention of the jury, the Court is unconvinced that the terms used were so inflammatory as to mandate an objection.

The United States Supreme Court's decision in *Darden v. Wainwright* is informative on this point. 477 U.S. at 178–83, 106 S.Ct. 2464. In *Darden,* the prosecutor had stated in his closing argument at trial that the defendant was an "animal" who should not be let out of prison without a leash, and added, "I wish that I could see him sitting here with no face, blown away by a shotgun." *Id.* at 180–81 n. 11 & 12, 106 S.Ct. 2464. Although the Court admitted that the "argument deserves ... condemnation," it concluded that the comments did not deprive the defendant of a fair trial. *Id.* at 179–81, 106 S.Ct. 2464. The Court based this conclusion on several factors, including its view that "the prosecutor's argument did not manipulate or misstate the evidence, nor did it implicate other specific rights of the accused." *Id.* at 181–82, 106 S.Ct. 2464.

Similar factors in the instant case lead the Court to the conclusion that, having heard the prosecutor's comments, trial counsel's conduct in failing to object did not fall below an objective standard of reasonableness under the first prong of *Strickland.* The comments were based on the evidence that the prosecutor intended to offer during the trial and were not misleading to the jury. Therefore, the Court concludes that Petitioner has not met his burden under the first prong of *Strickland* as to the first category of prosecutorial comments.

The Court next considers the prosecutor's comments on what the jury would

experience during the trial. The Court disagrees that these comments violated the "golden rule" by encouraging the jury to put themselves in the place of the victims. *See Sullivan v. State*, 636 A.2d 931, 941 (Del.), *cert. denied*, 513 U.S. 833, 115 S.Ct. 110, 130 L.Ed.2d 57 (1994) (improper for prosecutor to ask jury to occupy shoes of victim) (citation omitted); *Grayson v. Delaware*, 524 A.2d 1, 2–3 (Del.1987) (same). Rather, viewed in context, these comments informed the jury that they would be exposed to evidence in their capacity as jurors that would have an emotional impact upon them. The Court concludes that, by making these comments, the prosecutor was not asking the jury to place themselves in the position of the homicide victims, and therefore, did not violate the "golden rule." Therefore, it was not objectively unreasonable for trial counsel to refrain from objecting to these comments.

 Next, the Court turns to the prosecutor's reference to the Grand Jury indictment. The Court agrees with Petitioner that it is improper to imply that an indictment is conclusive of guilt. *Compare Hughes*, 437 A.2d at 573 (language implying that guilt can be presumed from mere fact of defendant's arrest is prejudicial). However, the context of this comment reveals that there was no such implication in the prosecutor's statement. The prosecutor stated within the same discourse that "the indictment is not evidence in this case." *Lawrie I*, Crim. A. Nos. K–92–08–0180 to 0182 (Tr. at A36). Given the way that the statement was phrased and the disqualifier that was immediately added, the Court concludes that trial counsel was reasonable in refraining from objecting to this comment.

 Finally, the Court considers the comments pertaining to how the jury should make its decision. Read in context, the Court again concludes that these comments were not objectionable. First, the Court does not find the prosecutor's reference to the deterrent effect of the death sentence to be problematic. *See Lawrie I*, Crim. A. Nos. K–92–08–0180 to 0182 (Tr. at C52); *compare Ward v. Whitley*, 21 F.3d 1355, 1363, *reh'g denied*, 30 F.3d 1496 (5th Cir.1994), *cert. denied*, 513 U.S. 1192, 115 S.Ct. 1257, 131

L.Ed.2d 137 (1995) (it is permissible argument to discuss need to impose death penalty as adequate punishment for crime committed). Second, as to Petitioner's contention that the prosecutor argued that the death of each victim was an aggravating circumstance, the prosecutor actually said that the fact that Petitioner's conduct resulted in the deaths of two or more persons as a probable consequence of his actions was a statutory aggravating circumstance. *Lawrie I*, Crim. A. Nos. K–92–08–0180 to 0182 (Tr. at C35). This is an accurate statement of Delaware law. Del.Code Ann., tit. 11, § 4209(e)(1)(k). Third, the prosecutor did not tell the jury to base its decision on sorrow for the dead, but rather listed all of the aggravating circumstances, both statutory and non-statutory, and stated, "Someone once said the sorrow for the dead is the only sorrow from which we refuse to be divorced." *Lawrie I*, Crim. A. Nos. K–92–08–0180 to 0182 (Tr. at C43). Read in context, this was not offered as a basis upon which the jury should base its decision. Therefore, trial counsel did not act in an objectively unreasonable manner in failing to object to any of the comments regarding how the jury should make its decision.

In summary, mindful of the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," the Court concludes, after reviewing all of the comments at issue, that it was not objectively unreasonable for trial counsel to refrain from objecting during both the opening statement of the guilt phase and the closing argument of the penalty phase of Petitioner's trial. *See Strickland*, 466 U.S. at 689, 104 S.Ct. 2052. As this court has previously stated, "[b]ecause many lawyers refrain from objecting during opening statement and closing argument, absent egregious misstatements by the prosecutor, the failure to object during closing argument and opening statement is within the 'wide range' of permissible professional legal conduct, and thus does not constitute ineffective assistance of counsel." *United States v. Lively*, 817 F.Supp. 453, 466 (D.Del.), *aff'd*, 14 F.3d 50 (3d Cir.1993) (citations omitted). Because the Court concludes that it was not objectively unreasonable for trial counsel to refrain from objecting to the

prosecutor's statements, it was also not objectively unreasonable for appellate counsel to refrain from raising this issue on appeal.

Further, the Court concludes that Petitioner has not met his burden under the second prong of *Strickland*, in that Petitioner has failed to demonstrate actual prejudice, i.e., a reasonable probability that the outcome of the proceedings would have been different had counsel performed differently.[10] The quantity and compelling nature of the evidence presented at trial were beyond sufficient to produce the result that occurred, even absent the prosecutor's comments. The Court is unconvinced that Petitioner was prejudiced by counsel's conduct, and agrees with the Delaware Superior Court that Petitioner's claim that certain remarks "improperly persuaded the jury is clearly belied by the fact that the jury acquitted [Petitioner] of the intentional first degree murder of his wife." *Lawrie III*, 1995 WL 818511, at *11 (citation omitted). Therefore, the Court concludes that the Delaware Superior Court's determination that counsel was not constitutionally ineffective on this point was correct under Section 2254(d). 28 U.S.C. § 2254(d).

### 3. Failure to Present Mitigating Psychiatric Testimony

In his next claim, Petitioner contends that although trial counsel retained two experts, Drs. Mechanick and Weintraub, to " 'explore a possible mental defense,' " trial counsel failed to develop or present mitigating psychiatric testimony during the penalty phase of Petitioner's trial. (D.I. 23 at 58). Referring to the post-conviction relief evidentiary hearing, Petitioner contends that if Dr. Mechanick had been called during the penalty hearing, he would have testified, *inter alia*, that Petitioner was not of a violent nature but rather suffered from adjustment disorder with mood disturbance at the time of the killings, and that Petitioner lacked a role model, had subconscious feelings about his own parents divorce, had low self-esteem which his wife's taunting exacerbated, and was affected by cocaine on the day of the killings, all of which contributed to his mental state when he committed the crimes. (D.I. 23 at 61). Dr. Mechanick would have also offered testimony regarding the violent nature of prison life as it related to Petitioner, and the possibility of post-traumatic stress disorder as an explanation for Petitioner's apparent lack of remorse. (D.I. 23 at 61). According to Petitioner, this would all have constituted probative evidence that mitigated against the death penalty, had it been offered by trial counsel. (D.I. 23 at 61). Petitioner argues that the state court's finding that counsel was not ineffective in this area is incorrect. (D.I. 23 at 61).

Respondent, on the other hand, contends that trial counsel acted in an objectively reasonable manner and that Petitioner was not prejudiced by counsel's actions under the test set forth in *Strickland*.[11] (D.I. 21 at 59). According to Respondent, Dr. Mechanick believed Petitioner to be an angry man with little depression or remorse. (D.I. 21 at 61). Further, Respondent asserts that Dr. Mechanick assessed the value of his own testimony as only three or four out of a possible ten. (D.I. 21 at 61); *Lawrie III*, 1995 WL 818511 (Tr. at B76). Respondent contends that in light of the possibility that expert testimony could create more problems than it solved, trial counsel made an objectively reasonable, strategic decision not to present the testimony. (D.I. 21 at 62). Further, because Dr. Mechanick stated that his views were based solely on his discussions with Petitioner and that he needed additional information to formulate a final diagnosis, Respondent argues that Dr. Mechanick's opinions were too equivocal to have been reasonably likely to change the jury's decision regarding the death penalty, and therefore, that Petitioner was not prejudiced under *Strickland*. (D.I. 21 at 62).

Petitioner has exhausted this claim by presenting it to the state court as required by Section 2254(b)(1)(A). Motion For Post–Conviction Relief at Item 12, Ground Two, *Lawrie III*, 1995 WL 818511; Appellant's Opening Brief at 56, *Lawrie IV*, 682 A.2d 626; *see* 28 U.S.C. § 2254(b)(1)(A). Al-

---

**10.** For a further discussion of *Strickland,* see pages 434–35.

**11.** For a more thorough discussion of *Strickland,* see pages 434–35.

though the Superior Court considered the possibility of a procedural bar to this claim, it opted instead to consider the claim on the merits, and this Court will do the same.[12] *Lawrie III*, 1995 WL 818511, at *4, n. 4. As previously discussed, the Court cannot grant a petition on a claim that has been adjudicated on the merits by the state court unless it was contrary to Federal law or based on an unreasonable determination of the facts.[13] Although state court determinations on the issue of ineffective assistance of counsel are not binding on this Court because they are considered to be mixed questions of law and fact, the underlying factual findings are entitled to deference.[14]

■ Having reviewed the transcripts of Dr. Mechanick's testimony at the post-conviction evidentiary hearing and other relevant documents, the Court concludes that the state court's determination that counsel was not ineffective on this point was correct. *See* 28 U.S.C. § 2254(d); *Lawrie III*, 1995 WL 818511, at *16–17. Although, as Petitioner points out, the "failure to conduct *any* pretrial investigation generally constitutes a clear instance of ineffectiveness," there was no such failure in the instant case. *United States v. Gray*, 878 F.2d 702, 711 (3d Cir. 1989) (emphasis added). Counsel had Petitioner examined by two mental health experts, a psychologist (Dr. Weintraub) and a psychiatrist (Dr. Mechanick). *Lawrie III*, 1995 WL 818511, at *15. Counsel stated at the evidentiary hearing on the motion for post-conviction relief that he selected Drs. Weintraub and Mechanick because they were both reliable and asked them for their opinions regarding any mental health issues that could be helpful to Petitioner's defense. *Id.* (Tr. at B26). Both doctors were sufficiently qualified and experienced with bifurcated capital murder proceedings to point out possibly mitigating evidence without being

prompted to do so. *Id.* (Tr. at C6–9). As pointed out by the state court, "specifically discussed, according to counsel's contemporaneous notes, were mitigation factors." *Id.* at *15. Thus, the Court concludes that trial counsel's actions did not amount to a failure to conduct pretrial investigation.

What trial counsel learned in his pretrial investigation and discussions with Drs. Weintraub and Mechanick led him to the objectively reasonable decision not to call them as witnesses. In particular, Dr. Mechanick told trial counsel that Petitioner was an angry man, with no depression and little remorse. *Lawrie III*, 1995 WL 818511 (Tr. at B46, B83, C62, C65). Dr. Mechanick did, however, note a desire for revenge. *Id.* (Tr. at C80). In addition, at the evidentiary hearing, Dr. Mechanick stated that his opinions were based exclusively upon Petitioner's own version of the crime and Petitioner's background. *Id.* (Tr. at C15–19, C60). Further, Petitioner relayed several different versions of the crime and his motives to Dr. Mechanick. *Id.* (Tr. at C80). Given the likelihood that these adverse points would come out on cross-examination, counsel made a strategic decision not to call Dr. Mechanick. *Id.* (Tr. at B45). The Court views this decision as a reasonable one and concludes that the state court's consistent determination was appropriate under Section 2254(d). *See* 28 U.S.C. § 2254(d); *Deputy v. Taylor*, 19 F.3d 1485, 1493 (3d Cir.), *cert. denied*, 512 U.S. 1230, 114 S.Ct. 2730, 129 L.Ed.2d 853 (1994) (citing *Burger v. Kemp*, 483 U.S. 776, 107 S.Ct. 3114, 97 L.Ed.2d 638, *reh'g denied*, 483 U.S. 1056, 108 S.Ct. 32, 97 L.Ed.2d 820 (1987) (attorney's tactical decision not to present evidence of defendant's problematic family background suggesting violent tendencies was reasonable)).

12. In a footnote, the Superior Court stated that it was unable to locate this ground for relief in the initial pro se motion and amended motion for post-conviction relief, other than Ground Two, which was specifically waved by Petitioner in the state court. *Lawrie*, 1995 WL 818511, at *4, n. 4. Therefore, the court stated that the claim should be barred because it had not been previously raised in that proceeding. *Id.* However, "in the interest of justice," the court decided to

consider the claim on its merits despite Petitioner's failure to properly raise it in his motions. *Id.*

13. For a more thorough discussion of this issue, see pages 433–34.

14. For a more thorough discussion of this issue, see pages 433–34.

Further, Petitioner has not established prejudice under *Strickland.* Because this is a death penalty case, in order to show prejudice, Petitioner would have to demonstrate a reasonable probability that absent counsel's alleged errors, the jury would have concluded that the balance of aggravating and mitigating circumstances did not warrant a death sentence. *Frey v. Fulcomer,* 974 F.2d 348, 358 (3d Cir.1992), *cert. denied,* 507 U.S. 954, 113 S.Ct. 1368, 122 L.Ed.2d 746 (1993). Given the equivocal nature of Dr. Mechanick's testimony, the Court is not persuaded that it was reasonably likely to have changed Petitioner's sentence. Therefore, the Court concludes that the state court's consistent determination involved a reasonable application of Federal law based on a reasonable determination of the facts. *See* 28 U.S.C. § 2254(d).

### 4. Failure to Interview or Call Mitigating Witness in Penalty Phase

■ Next, Petitioner argues that trial counsel was ineffective for failing to interview and call a witness whom Petitioner contends would have refuted Respondent's assertion during the penalty phase that Petitioner engaged in violent conduct while incarcerated pending trial. (D.I. 4, "Ground Seven.") At the penalty hearing, the Government introduced evidence of three disciplinary complaints filed against the Petitioner while he was in prison awaiting trial, one of which involved an allegation that Petitioner had gagged and "hog-tied" a cellmate named Kyle Maggart. *Lawrie I,* Crim.A. Nos. K–92–80–0180 to 0182 (Tr. of Penalty Hrg. at B58, B80, B107–108). Petitioner confessed to this assault on Maggart. *Id.* (Tr. of Penalty Hrg. at B113). Maggart, however, testified at the post-conviction evidentiary hearing that this incident was a consensual ruse designed by Maggart to obtain his own release from protective custody in a maximum security unit. *Lawrie III,* 1995 WL 818511 (Tr. at A19). Petitioner contends that because trial counsel knew of Maggart's version before the penalty hearing, counsel was constitutionally ineffective in failing to interview or call Maggart to testify and offer this mitigating evidence.

(D.I. 23 at 67–68). Petitioner asserts that prejudice under *Strickland* is evident in light of the fact that the sentencing judge specifically relied on the incident with Maggart as indicative of Petitioner's violent propensities. (D.I. 23 at 71).

According to Respondent, regardless of whether trial counsel's actions were objectively reasonable, Petitioner cannot establish prejudice. (D.I. 26 at 71). Petitioner confessed to the incident with Maggart both in writing and orally a total of three times. (D.I. 26 at 71); *see e.g., Lawrie III,* 1995 WL 818511 (Tr. of Penalty Hrg. at A55). According to Respondent, the evidence that could have been offered by calling Maggart as a witness can be summed up as the testimony of a convicted rapist serving a fifty year prison sentence who would tell the jury that Petitioner was a liar. (D.I. 26 at 71). Respondent argues that such testimony would have been harmful to Petitioner's case, rather than beneficial. (D.I. 26 at 71). Therefore, Respondent contends, the ultimate result of the penalty hearing would not have changed, and in turn, Petitioner was not prejudiced under *Strickland.*

This claim has been exhausted as required by 28 U.S.C. § 2254(b)(1)(A). (*See* Motion For Post–Conviction Relief, Grounds Six and Twenty (O.), *Lawrie III,* 1995 WL 818511; Appellant's Opening Brief at 66–69, *Lawrie IV,* 682 A.2d 626.) Because the state court adjudicated this claim on its merits, the Court can grant relief only if the state court decision was contrary to or based on an unreasonable application of clearly established Federal law, or was based on an unreasonable determination of the facts.[15] *See* 28 U.S.C. § 2254(d). The state court determined that Petitioner's confession "to the incident which included choking Maggart until he passed out" prevented a finding of both unreasonableness and prejudice under *Strickland. Lawrie III,* 1995 WL 818511, at *13. The Court concludes that this determination is neither contrary to clearly established Federal law nor based on an unreasonable determination of the facts.

**15.** For a more thorough discussion of this stan- dard, see pages 433–34.

Regarding the reasonableness of counsel's decision not to interview or call Maggart to the witness stand, even in the absence of an interview, testimony at the post-conviction motion evidentiary hearing indicated that counsel knew what Maggart's version of the incident was and knew that it completely contradicted Petitioner's version. *Lawrie III*, 1995 WL 818511 (Tr. at B175). Thus, the best possible scenario facing counsel, were Maggart to testify, was that the jury would believe Maggart and therefore believe that Petitioner was involved in a scheme to manipulate prison officials in order to obtain lesser security for a convicted rapist, and further, that Petitioner had lied to prison authorities on three occasions for that purpose. Such behavior would not have reflected positively on Petitioner, to say the least. The testimony could also have lead the jury to question whether Petitioner had been truthful to them at other points in the proceedings. Certainly, under these circumstances, it was objectively reasonable for trial counsel to opt not to pursue testimony that had the potential to be so damaging to his client's credibility.

The same line of reasoning leads to the conclusion that Petitioner was not actually prejudiced by trial counsel's decision. Were Maggart to testify, it is not likely that the outcome of the proceedings would have been different. Rather, the testimony probably would have generated an entirely new set of questions about Petitioner's credibility. For these reasons, the Court concludes that the state court's determination reflected a proper and reasonable application of Federal law and a reasonable determination of the facts as required by Section 2254. *See* 28 U.S.C. § 2254(d).

### B. Jury's Inability To Bear Defense Counsel During Guilt And Penalty Phases Of Trial

Petitioner next contends that his rights to counsel, due process of law, and a trial before a fair and impartial jury were violated as the result of the jury's inability to hear and understand his attorney during the guilt and penalty phases of his trial. (D.I. 4 at "Ground Three.") Petitioner bases this argument on the fact that while the post-conviction relief proceedings were pending, one of the trial jurors approached trial co-counsel and stated that she had difficulty understanding lead defense counsel during the trial. (D.I. 23 at 33.)

In order to properly frame Petitioner's argument, the Court finds it helpful to set forth the historical context of this claim. When Petitioner learned that a juror had stated that she had difficulty understanding defense counsel during the trial, he filed a motion in the Delaware Superior Court for an evidentiary hearing to determine whether the juror who had come forward could provide admissible testimony relevant to the post-conviction relief proceeding that was pending before the Superior Court at that time. (D.I. 23 at 33.) After holding a pre-trial conference on this matter, the Superior Court denied the motion. *Lawrie III*, 1995 WL 818511 (Pre–Trial Conf.Tr., Del.Super.Ct. April 17, 1995), (Motion To Expand Record, Tr. at 5–32, Del.Super.Ct. May 9, 1995), Order Denying Defendant's Motion For Evidentiary Hearing Pertaining To Extrinsic Influence On Jurors (Del.Super.Ct. May 30, 1995). The Superior Court based its decision on Delaware Rule of Evidence 606(b), which mirrors Federal Rule of Evidence 606(b) and generally prohibits juror testimony about deliberations when there is an inquiry into the validity of a verdict. *Lawrie III*, 1995 WL 818511, Order Denying Defendant's Motion For Evidentiary Hearing Pertaining To Extrinsic Influence On Jurors (Del.Super. May 30, 1995); *see* Del.R.Evid. 606(b); Fed.R.Evid. 606(b). Although the court recognized that an inquiry into the mental processes of a juror is permitted where either extraneous prejudicial information is improperly brought to the jury's attention or an outside influence is improperly brought to bear on the jury, the court concluded that a juror's inability to hear defense counsel did not constitute an extrinsic influence. *Id.*

On appeal of the post-conviction relief motion to the Delaware Supreme Court, Petitioner argued that his rights to due process and to a trial before a fair and impartial jury were violated by the jury's inability to hear

and understand defense counsel during his trial. Appellant's Opening Brief at 51 *Lawrie IV,* 682 A.2d 626. Petitioner's entire argument to the Supreme Court focused on his assertion that the Superior Court had erroneously denied his motion for an evidentiary hearing. *Id.* at 51–55. The Supreme Court affirmed the decision of the Superior Court in its entirety. *Lawrie IV,* 682 A.2d at 626.

Before .this Court, Petitioner again bases his entire argument on his view that the Superior Court's denial of his motion for an evidentiary hearing on the jury issue was in error. (D.I. 23 at 34). Although Petitioner concedes that under Delaware Rule of Evidence 606(b) a juror may not generally impeach his or her own verdict once the jury has been discharged and that inquiry into a jury's mental processes is prohibited, Petitioner argues that the Superior Court's reliance upon this rule as a basis to deny Petitioner's request for an evidentiary hearing was misplaced. (D.I. 23 at 36.) According to Petitioner, because the inability to hear defense counsel during trial did not relate to the jury's deliberations or the jury's mental processes, an evidentiary hearing would not have violated Rule 606(b). (D.I. 23 at 36.) Alternatively, Petitioner argues that the state should have granted an evidentiary hearing under the exception to Rule 606(b), which permits juror testimony regarding any outside influence that was improperly brought to bear upon any juror. (D.I. 23 at 36). In addition, Petitioner requests that this Court hold an evidentiary hearing on this matter, and alternatively requests discovery on this issue. (D.I. 23 at 41; D.I. 4, "Prayers For Relief, C.").

Respondent contends that Petitioner is not entitled to relief under Section 2254 because this claim does not involve a matter of federal constitutional law but rather is based on state law. (D.I. 26 at 25); *see* 28 U.S.C. § 2254(d)(1). Further, Respondent argues that the decision of the state courts to deny the motion for an evidentiary hearing was reasonable both in its interpretation of the facts and its application of the law, and therefore, did not violate Petitioner's due process rights. (D.I. 26 at 30). Respondent

also contends that Petitioner is not entitled to an evidentiary hearing in this Court on this matter, and bases its argument on Section 2254(e) of the habeas corpus statute, which limits a district court's ability to hold an evidentiary hearing where the applicant has failed to develop the factual basis of a claim in the state court proceedings. (D.I. 26 at 31). Alternatively, Respondent argues that Petitioner is not entitled to an evidentiary hearing because his allegations in any event would not entitle him to relief. (D.I. 26 at 34).

█ Noting that Petitioner has exhausted this claim by presenting it to the Delaware Supreme Court on appeal of his motion for post-conviction relief, the Court concludes that the Superior Court's decision to deny Petitioner's request for an evidentiary hearing in the post-conviction proceedings on the basis of a rule of evidence is a matter of state law, and that the Court cannot provide habeas relief in such a situation. *See* Appellant's Opening Brief at 51 *Lawrie IV,* 682 A.2d 626. Section 2254 permits a district court to consider a habeas petition only where the petitioner asserts a "violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a) (1997). A state court's interpretation of state evidentiary rules does not meet this requirement, and this Court has no authority to interfere with the state court's decision. *Estelle v. McGuire,* 502 U.S. 62, 72, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (federal court cannot grant habeas relief based on belief that trial judge interpreted or applied state evidence rule incorrectly); *Shillcutt v. Gagnon,* 827 F.2d 1155, 1158 (7th Cir.1987) (federal court would not entertain argument that state court misconstrued state evidence rule).

Furthermore, the Court is not prepared to conclude that the Superior Court's decision not to hold an evidentiary hearing constituted a violation of due process. Petitioner's attack on the state court's application of post-conviction procedures does not state a basis for federal habeas relief. Dawson v. Snyder, 988 F.Supp. 783, 826 (D.Del.1997) (citations omitted) (district court would not consider claim that Delaware Superior Court denied petitioner due process by limiting his rights

to discovery, evidentiary hearing and expansion of record); *see also Duff–Smith v. Collins,* 973 F.2d 1175, 1182 (5th Cir.1992), *cert. denied,* 507 U.S. 1056, 113 S.Ct. 1958, 123 L.Ed.2d 661 (1993) (citation omitted) ("infirmities in state habeas proceedings do not constitute grounds for federal habeas relief"). Therefore, the Court will not consider this claim, and relief on this basis is denied. Because the claim does not entitle Petitioner to relief, Petitioner's request for an evidentiary hearing and for discovery on this claim will be denied. *See Townsend v. Sain,* 372 U.S. 293, 312, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963) (district court's power to hold evidentiary hearing does not arise unless petitioner "alleges facts which, if proved, would entitle him to relief"); Rules Governing Section 2254 Cases in the United States District Courts Rule 6(a) (1997) (discovery available to habeas petitioner only in court's discretion and for good cause shown).

## C. Inadequate Notice Of Non–Statutory Aggravating Circumstances

Petitioner next contends that his due process rights were violated because the State gave inadequate notice regarding the nonstatutory aggravating circumstances that it intended to offer at the penalty hearing. (D.I. 4 at "Ground Five"). According to Petitioner, the State's notice indicated on that it intended to introduce evidence regarding "the negative character and propensities of the defendant." (D.I. 23 at 52). Petitioner argues that this type of notice left defense counsel unable to prepare to defend against the evidence, which took the form of Petitioner's disciplinary record during his incarceration prior to trial. (D.I. 23 at 53).

While Petitioner agrees that this claim would ordinarily be barred under Delaware Superior Court Criminal Rule 61(i)(3) because it was not raised on direct appeal, Petitioner asserts that he has demonstrated cause and prejudice for his procedural default. (D.I. 23 at 53–54). Petitioner advocates a less "technical" understanding of the "cause and prejudice" requirement, and argues that cause is present because appellate counsel could not have discerned the legal significance of the inadequate notice "as the

harm flowing therefrom was not apparent from the paper record and only became evident (as a matter of record) at the [postconviction] evidentiary hearing." (D.I. 23 at 54). In support of this assertion, Petitioner cites to the concurring opinion in *Canary v. Bland,* wherein Judge Merritt of the Court of Appeals for the Sixth Circuit stated that "cause" can mean that "neither the defendant nor his attorney could reasonably have been expected to know or appreciate the legal significance of the facts upon which the objection is based." (D.I. 23 at 54); *Canary v. Bland,* 583 F.2d 887, 894 (6th Cir.1978) (citations omitted). Petitioner further argues that he was prejudiced by appellate counsel's procedural default because the inadequate notice rendered the penalty hearing unfair. (D.I. 23 at 55). Petitioner claims that as a result of the type of notice given, trial counsel could only guess at what evidence would be addressed. (D.I. 23 at 55). Petitioner contends that his trial counsel's surprise was evidenced by trial counsel's failure to secure the prison records and his failure to interview and subpoena Kyle Maggart. (D.I. 23 at 56).

Respondent, on the other hand, argues that Petitioner has failed to demonstrate cause and prejudice for his procedural default, and therefore, that the claim must be dismissed. (D.I. 26 at 57). As to cause, Respondent argues that Petitioner himself was able but failed to inform appellate counsel about the incident with Maggart and that therefore, Petitioner should not now be able to use that information as a means to show cause. (D.I. 26 at 58). In addition, Respondent argues, any deficiency in notice would have been evident to appellate counsel in preparing the direct appeal. (D.I. 26 at 58). Respondent further contends that prejudice has not been shown. (D.I. 26 at 59). In support, Respondent argues that trial counsel conceded that he had a full day to evaluate the evidence and discuss it with his client, did not ask for a continuance, and that the trial court correctly determined that the notice was sufficient. (D.I. 26 at 60). Finally, Respondent argues that deciding in Petitioner's favor and requiring more detailed notice would require the retroactive application of a

new rule of federal constitutional law. (D.I. 26 at 61).

On the motion for post-conviction relief, the Superior Court determined that this claim was barred by Delaware Superior Court Criminal Rule 61(i)(3) because Petitioner did not raise this issue on direct appeal.[16] De.Super.Ct.Crim. Rule 61(i)(3); *Lawrie III*, 1995 WL 818511, at *13. Rule 61(i)(3), which bars the Delaware Superior Court from considering any claim not presented in "the proceedings leading to the judgment of conviction," is an adequate and independent state law ground upon which to preclude federal habeas review.[17] *DeShields v. Snyder*, 830 F.Supp. 819, 822 (D.Del.1993); *Flamer v. Chaffinch*, 827 F.Supp. 1079, 1087–88 (D.Del.1993), *aff'd*, 68 F.3d 710 (3d Cir. 1995), *cert. denied*, 516 U.S. 1088, 116 S.Ct. 807, 133 L.Ed.2d 754 (1996). Therefore, in order for the Court to address this claim, Petitioner must establish either cause for and actual prejudice resulting from his state procedural default, or demonstrate that a miscarriage of justice will result if the Court refuses to hear his claim. Because Petitioner has not met this burden, the claim will be dismissed.

■ As noted previously, to establish cause for a procedural default, a petitioner "must show that 'some objective factor external to the defense precluded his compliance with the state procedural rules.'" *Bailey v. Kearney*, No. Civ. A. 95–279–SLR, 1997 WL 309449, at *3 (D.Del. Apr.3, 1997) (citing *McCleskey v. Zant*, 499 U.S. 467, 493, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991)). Petitioner's explanation for cause does not meet this description. Although appellate counsel purportedly did not raise the notice issue on appeal because he could not have known in advance how it would affect the subsequent

post-conviction evidentiary hearing, the trial transcript should have alerted appellate counsel as to a possible issue for appeal, because the type of notice given was specifically raised by trial counsel and specifically addressed by the trial court at the penalty phase. (Tr. of Penalty Hrg. at A130, B8–B20). This should have indicated to appellate counsel the possibility that trial counsel did not have sufficient notice to adequately prepare to address the disciplinary record issue at the penalty phase. The Court also agrees with Respondent that even if the trial transcript did not alert appellate counsel to the issue, Petitioner himself had the ability to inform appellate counsel about a potentially different version of the Maggart incident. Petitioner cannot be permitted to use information that he withheld as a means to establish cause for default. *See Hoke v. Netherland*, 92 F.3d 1350, 1354 n. 1 (4th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 630, 136 L.Ed.2d 548 (1996) (availability of information to defendant prevented him from establishing cause for procedural default). Therefore, because no external factor precluded pursuit of this issue on appeal, the Court concludes that cause has not been demonstrated.

The Court is also unpersuaded by Petitioner's reliance on the concurring opinion in *Canary v. Bland* as support for his argument that cause for procedural default lies in his attorney's failure to appreciate the legal significance of the state's inadequate notice.[18] (D.I. 23 at 54); *Canary v. Bland*, 583 F.2d 887 (6th Cir.1978). Although the majority opinion referred to the "cause and prejudice" standard under *Wainwright v. Sykes*, the court did not conduct a cause and prejudice analysis. *Id.* at 894 (citation omitted). Thus, the Court does not find the concurring opin-

---

**16.** The Delaware Superior Court also held that this claim was barred as formerly adjudicated by Rule 61(I)(4), because the trial court had already heard and rejected the notice argument. *Lawrie*, 1995 WL 818511, at *13.

**17.** For further discussion of the independent and adequate state ground doctrine, see pages 440–41.

**18.** *Canary* involved a habeas corpus petitioner who had been adjudged a habitual criminal

based in part upon a prior guilty plea entered by him. *Canary*, 583 F.2d at 888. The court held that although Kentucky law did permit an appeal following a guilty plea, it did not permit a "flank attack" on a prior conviction which was relied upon to obtain a habitual criminal conviction. *Id.* at 890. The court concluded that failure to assert such a constitutional challenge within the framework required by Kentucky law prevented that challenge from being raised in a federal habeas proceeding absent a showing of cause and prejudice. *Id.*

ion in *Canary* to have precedential value in the instant case.

■ Because cause has not been demonstrated, the Court need not address the issue of prejudice. *Carter v. Neal,* 910 F.Supp. 143, 151 (D.Del.1995) (citing *Presnell v. Kemp,* 835 F.2d 1567, 1589 n. 29, *reh'g denied,* 854 F.2d 1326 (11th Cir.1988), *cert. denied,* 488 U.S. 1050, 109 S.Ct. 882, 102 L.Ed.2d 1004 (1989)). In any event, the Court concludes that prejudice also has not been shown. The trial court determined that the type of notice given was sufficient under Title 11, Section 4209 of the Delaware Code, and that Petitioner was not entitled to a detailed description of the evidence that would be offered.[19] *Lawrie I,* Crim. A. Nos. K–92–80–0180 to 0182 (Tr. of Penalty Hrg. at B12–B20); *Lawrie III,* 1995 WL 818511, at *14. Further, trial counsel had a full day to evaluate the evidence and discuss it with his client, told the trial judge that he had enough information to know what the issue was, and did not ask for a continuance. *Lawrie I,* Crim. A. Nos. K–92–80–0180 to 0182 (Tr. of Penalty Hrg. at B9–B11). Therefore, because the Court concludes that Petitioner has established neither cause nor prejudice for his procedural default, his claim of insufficient notice regarding non-statutory aggravating factors must be dismissed.

## D. Failure Of Trial Court To Properly Instruct Jury During Penalty Phase

■ Finally, Petitioner argues that his Eighth Amendment rights were violated because the jury was not instructed during the penalty phase regarding the State's burden of proof as to the existence or non-existence of non-statutory aggravating factors and the Petitioner's burden of proof regarding mitigating factors. (D.I. 4 at "Ground Eight"). Although appellate counsel argued this issue on direct appeal, the Delaware Supreme Court held that the claim was procedurally barred under Delaware Supreme Court Rule

8, which provides that "[o]nly questions fairly presented to the trial court may be presented for review; however, that when the interests of justice so require, the Court may consider and determine any questions not so presented." (D.I. 23 at 74); Del.Supr.Ct. Rule 8; *Lawrie II,* 643 A.2d 1336, 1341–42 (Del.1994). Therefore, the Supreme Court reviewed this claim only for plain error. *Lawrie II,* 643 A.2d at 1342.

Petitioner concedes that Rule 8 is an independent and adequate state ground precluding federal habeas relief, but argues that he has demonstrated cause and prejudice for his procedural default. (D.I. 23 at 74–75). Petitioner contends that trial counsel's "inexplicable failure to object to the jury instructions given" amounted to ineffective assistance of counsel which constituted the cause for his procedural default. (D.I. 23 at 75). Petitioner further argues that actual prejudice has been demonstrated because the uncontested instructions that were given to the jury resulted in Petitioner receiving three death sentences. (D.I. 23 at 76). As to the merits of his claim, Petitioner contends that a reasonable juror could have incorrectly concluded from the instructions given that the Petitioner was required to prove the existence of mitigating factors beyond a reasonable doubt and that the State was not required to prove non-statutory aggravating circumstances beyond a reasonable doubt. (D.I. 23 at 77–79).

According to Respondent, Petitioner has not established cause and prejudice for his procedural default, nor has he demonstrated that a miscarriage of justice will result if the Court refuses to hear his claim. (D.I. 26 at 75). As for Petitioner's claim that ineffective assistance of counsel was the cause for his procedural default, Respondent contends that this particular brand of ineffective assistance of counsel was not presented to the state courts as required by the exhaustion doctrine.[20] (D.I. 26 at 76). Therefore, Respon-

---

**19.** According to Section 4209(c):

Notice in writing of any aggravating circumstances and any mitigating circumstances shall be given to the other side by the party seeking to introduce evidence of such circumstances prior to the punishment hearing, and after the verdict on guilt, unless in the discretion of the

Court such advance notice is dispensed with as impracticable.

Del.Code Ann., tit. 11, § 4209(c).

**20.** Respondent also argues that the claim of ineffective assistance as cause for his procedural default was mentioned only in Petitioner's open-

dent argues that the ineffective assistance claim is procedurally barred. Respondent argues that even absent this procedural default, Petitioner cannot establish ineffective assistance of counsel, as counsel's performance in failing to object to the jury instructions was not constitutionally deficient. (D.I. 26 at 77).

Respondent also contends that Petitioner cannot establish prejudice to warrant excusing the procedural default of his Eighth Amendment claim under Rule 8. (D.I. 26 at 77). According to Respondent, there is no reasonable likelihood that the jury construed the instructions as Petitioner contends. (D.I. 26 at 78). Respondent argues that Petitioner has failed to establish that the instructions infected the entire trial resulting in the denial of due process. (D.I. 26 at 78–80, 83–86).

This Court has previously held that Delaware Supreme Court Rule 8 is an independent and adequate state ground that precludes federal habeas relief. *Dickson v. Snyder,* C.A. No. 95–227–JJF, Mem. Op. at 3–4 (D.Del. Jan. 19, 1996); *Cook v. Morgan,* C.A. No. 91–70–SLR (D.Del. June 16, 1992). The fact that the Delaware Supreme Court, in applying Rule 8, used its discretion to review for plain error does not diminish the impact of the court's plain statement that Rule 8 was applicable. *Carter v. Neal,* 910 F.Supp. 143, 150 (D.Del.1995) (citing *Harris v. Reed,* 489 U.S. 255, 265 n. 11, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) ("the 'plain statement' rule relieves a federal court from having to determine whether in a given case, consistent with state law, the state court has chosen to forgive. a procedural default")); *see Lawrie II,* 643 A.2d at 1341. Therefore, the claim was procedurally defaulted, and in order to obtain federal habeas review, Petitioner must demonstrate cause for and prejudice resulting from his procedural default. *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640, *reh'g denied,* 501 U.S. 1277, 112 S.Ct. 27, 115 L.Ed.2d 1109 (1991).[21]

Although Petitioner argues that the cause of his procedural default was ineffective assistance of counsel, Petitioner did not raise this particular ineffective assistance claim in the state courts. Therefore, he did not exhaust his state remedies as required by Section 2254(b).[22] *See* 28 U.S.C. § 2254(b)(1). However, where there is no longer an available state remedy, exhaustion is excused. 28 U.S.C. § 2254(b)(1) (court cannot grant petition unless petitioner has exhausted state remedies or state remedy is unavailable or would be ineffective to protect petitioner's rights); *see also Teague v. Lane,* 489 U.S. 288, 298, 109 S.Ct. 1060, 103 L.Ed.2d 334, *reh'g denied,* 490 U.S. 1031, 109 S.Ct. 1771, 104 L.Ed.2d 206 (1989) (citations omitted) (cause and prejudice standard applied where claim not exhausted). In the instant case, Delaware Superior Court Criminal Rule 61(I)(2), which bars any ground for relief that was not asserted in a prior postconviction proceeding, would apply to eliminate a state remedy for Petitioner, as, in the Court's view, Petitioner would be unable to establish the required cause and prejudice for failing to raise the claim. *See* Del.Super.Ct.Crim. Rule 61(I)(2). Therefore, Petitioner is excused from the exhaustion requirement. *See DeShields v. Snyder,* 829 F.Supp. 676, 681–82 (D.Del.1993) (citing *Flamer v. Snyder,* 827 F.Supp. 1079, 1099–

---

ing brief and not in the Petition, and therefore came too late. (D.I. 26 at 76). In support of this argument, Petitioner cites to *Wacht v. Cardwell,* 604 F.2d 1245 (9th Cir.1979). In *Wacht,* the petitioner presented a habeas' claim to the Court of Appeals for the Ninth Circuit that he had not presented to the district court, and the Court of Appeals therefore refused to consider the claim on appeal. *Id.* at 1247 n. 3. Unlike the petitioner in *Wacht,* Petitioner presents a claim in his Opening Brief that constitutes an argument to support a claim that is set forth in his Petition before this Court. Because of this distinction, the Court will not apply *Wacht* to bar Petitioner's claim.

21. For a more thorough discussion of the independent and adequate state ground doctrine, see pages 440–41.

22. In order to establish exhaustion of state court remedies, a petitioner must have raised both the precise factual and legal premises of the claims for relief that he asserts in a federal habeas proceeding. *Gibson v. Scheidemantel,* 805 F.2d 135, 138 (3d Cir.1986). Thus, the fact that Petitioner raised other ineffective assistance of counsel claims was not sufficient, as those claims did not pertain to trial counsel's failure to object to jury instructions.

1100 (D.Del.1993)) (ineffective assistance claim was not exhausted but was excused because no remedy was available as claim would be procedurally barred in state court under Rule 61(I)(1), (2) and (3)).

■ Nevertheless, Petitioner's failure to raise this ineffective assistance claim in state court is considered a procedural default pursuant to the adequate and independent state ground of Rule 61(I)(2). Accordingly, federal habeas review of the ineffective assistance claim is barred unless Petitioner can establish cause for his failure to raise the ineffective assistance issue in the state courts and actual prejudice, or that a miscarriage of justice will result if the Court refuses to consider the claim. *Coleman,* 501 U.S. at 750–51, 111 S.Ct. 2546. Petitioner neither acknowledges this default, nor offers any reasons to establish cause for the default. Petitioner has also failed to address the issue of prejudice or miscarriage of justice as they pertain to his ineffective assistance claim. Therefore, the Court concludes that the ineffective assistance claim is procedurally barred.

Because the claim of ineffective assistance of counsel is procedurally barred, Petitioner has not established cause for his Rule 8 procedural default of the overarching Eighth Amendment claim. Therefore, the Eighth Amendment jury instruction claim can be dismissed without reaching the question of whether actual prejudice has been shown. *Carter,* 910 F.Supp. at 151 (citation omitted); *Webster v. Engle,* 721 F.2d 566, 569 (6th Cir.1983) (cause and prejudice standard is conjunctive and without cause, prejudice need not be resolved).

In any event, Petitioner cannot establish actual prejudice. The Court has reviewed the jury instructions as a whole and concludes that it is not reasonably likely that the jury applied the instructions as Petitioner contends, and therefore, that a "cure" to the instructions would not have altered the jury's decision. *See Lawrie I,* Crim. A. Nos. K–92–08–0180 to 0182 (Tr. of Penalty Hrg. at C99–112).

■ As regards the instructions on the mitigating circumstances, neither the trial court nor the verdict form suggested that consideration of a mitigating circumstance required that the circumstance first be established beyond a reasonable doubt. In fact, in contrast to the discussion regarding statutory aggravating circumstances, the discussion of mitigating circumstances contained no reference to proof beyond a reasonable doubt. *Id.* (Tr. of Penalty Hrg. at C104). Further, although the jury was required to list the statutory aggravating circumstances that it found, there was no such requirement regarding the mitigating circumstances. *Id.* (Tr. of Penalty Hrg. at C115–116). This would suggest to the jury that the same standard or method of analysis was not applicable. For all of these reasons, the Court concludes that the jury was not reasonably likely to infer that mitigating circumstances had to be established beyond a reasonable doubt.

Regarding the instructions on the nonstatutory aggravating circumstances, the Court is not convinced that non-statutory aggravating circumstances must be proved beyond a reasonable doubt. The Delaware Code assigns the beyond a reasonable doubt standard to statutory aggravating circumstances, but not to nonstatutory aggravating circumstances. Del.Code Ann., tit. 11, §§ 4209(d)(1)(a), (e)(1). As stated by the Delaware Supreme Court, "the Delaware death penalty statute does not require the State to present evidence establishing a nonstatutory aggravating circumstances beyond a reasonable doubt before it may be 'found to exist.'" *Jackson v. State,* 684 A.2d 745, 753 (Del.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1438, 137 L.Ed.2d 545 (1997) (quoting *Dawson v. State,* 637 A.2d 57, 62–64 (Del. 1994)); *see also Red Dog v. State,* 616 A.2d 298, 307 (Del.1992) (non-statutory aggravating circumstances shown only by "substantial and reliable evidence"). Thus, the Court concludes that such an instruction was not appropriate, and Petitioner cannot demonstrate prejudice in the absence of such an instruction.

In summary, because it is not reasonably likely that the jury interpreted the instructions in the manner suggested by Petitioner, the Court is unconvinced that a different

outcome would have resulted had the instructions been altered. Thus, the Court concludes that Petitioner has failed to demonstrate actual prejudice stemming from his failure to previously litigate this claim, and the claim must be dismissed.

■ Finally, Petitioner has not demonstrated that a miscarriage of justice will result if the Court refuses to hear the claim. *Coleman,* 501 U.S. at 750–51, 111 S.Ct. 2546. The miscarriage of justice exception applies only to "extraordinary cases." *Coleman,* 501 U.S. at 750, 111 S.Ct. 2546. To establish a miscarriage of justice, Petitioner must demonstrate that it is more likely than not that no reasonable juror would have found him eligible for the death penalty had the instructions been different. *Sawyer v. Whitley,* 505 U.S. 333, 348–49, 112 S.Ct. 2514, 120 L.Ed.2d 269, *reh'g denied,* 505 U.S. 1244, 113 S.Ct. 21, 120 L.Ed.2d 948 (1992). The Court concludes that Petitioner has not met this burden, particularly in light of the first degree arson and second degree burglary convictions, which established the requisite statutory aggravating circumstances to make Petitioner eligible for the death penalty under Delaware law. *See* Del.Code Ann., tit. 11, § 4209(e)(2). For this reason, the claim must be dismissed.

### CONCLUSION

For the reasons discussed, Petitioner David J. Lawrie's Petition For A Writ Of Habeas Corpus (D.I.4) will be dismissed and the relief requested will be denied. The Court will continue the stay of execution entered in this case so as to permit Petitioner's appeal from this decision to be filed. The stay shall remain in effect pending a decision by the Court of Appeals for the Third Circuit.

An appropriate Order will be entered.